**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>
BLASKET RENEWABLE INVESTMENTS,
LLC,

              Petitioner,

              v.

KINGDOM OF SPAIN,

              Respondent.
</td><td>
Civil Action No. 20-1081 (BAH)

Judge Beryl A. Howell
</td></tr>
</table>

**<u>MEMORANDUM OPINION</u>**

On September 11, 2025, after nearly a decade of arbitration and litigation, judgment ("September 2025 Judgment") was entered in favor of petitioner, Blasket Renewable Investments, LLC ("petitioner" or "Blasket"), confirming a foreign arbitral award of more than €77 million against respondent, the Kingdom of Spain ("Spain"). *See Blasket Renewable Invs. LLC v. Kingdom of Spain*, No. 20-cv-1081 (BAH), 2025 WL 3516146 (D.D.C. Sept. 11, 2025), docketed at ECF No. 97.[1] Spain appealed that ruling in October 2025 to the D.C. Circuit, and that appeal remains pending. *See* Notice of Appeal to D.C. Circuit ("Not. of Appeal"), ECF No. 99.

The parties have filed three pending post-judgment motions. First, Spain moves to quash a subpoena issued by petitioner to the Clearing House Payments Company ("Clearing House") seeking information about Spain's assets that may eventually be attached in aid of execution. *See* Resp.'s Mot. to Quash or Modify Third-Party Subpoena to Clearing House Payments Co. ("Resp.'s Clearing House Mot."), ECF No. 107. Second, Spain moves to stay enforcement of the September

---

[1] Consistent with the arbitral award, pre- and post-judgment interest was also granted on the award, along with €2,515,291.69 in arbitration costs, as determined by the arbitral tribunal constituted under the auspices of International Centre for Settlement of Investment Disputes ("ICSID"), in accord with the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention"). *Blasket*, 2025 WL 3516146, at *9.

1

2025 Judgment without posting a supersedeas bond, including a stay of "all efforts by [petitioner] directed towards enforcement of [the September 2025 Judgment]," or, in the alternative, to quash a discovery request issued by petitioner to Spain and six additional subpoenas issued by petitioner to third parties in an effort to locate Spain's assets. Resp.'s Mot. to Stay Enforcement of J. & Quash Subpoenas ("Resp.'s Stay Mot."), ECF No. 112. Finally, petitioner, in addition to opposing the relief sought by Spain, moves for two declarations expressly allowing petitioner, pursuant to 28 U.S.C. § 1610(c), to attach and execute against Spain's assets to enforce the September 2025 Judgment, and, pursuant to 28 U.S.C. § 1963, to register the judgment in other judicial districts. Pet'r's Cross-Mot. for Relief Pursuant to 28 U.S.C. § 1610(c) & 28 U.S.C. § 1963 ("Pet'r's Cross-Mot."), ECF No. 116; Pet'r's Mem. (1) in Opp'n to Resp.'s Clearing House Mot. & Mot. to Stay & Quash and (2) in Support of Pet'r's Cross-Mot. ("Pet'r's Opp'n"), ECF No. 117.

For the reasons described below, Spain's motions are denied, and petitioner's motion is granted.

## I.    BACKGROUND

In October 2015, petitioner's predecessors-in-interest, which were companies that had invested in renewable energy projects in Spain, pursued arbitration against Spain, alleging that Spain had withdrawn certain renewable energy incentives in violation of the Energy Charter Treaty ("ECT"). *Blasket*, 2025 WL 3516146, at *1. After more than four years of arbitration, in January 2020, the International Centre for Settlement of Investment Disputes ("ICSID"), the arbitral forum chosen by the investors, ruled in the investors' favor, awarding them €77 million in damages, pre- and post-award interest on those damages, and arbitration costs. *Id.* In April 2020, the investors filed the instant case to confirm and enforce the ICSID award, because the United States is a signatory to the Convention on the Settlement of Investment Disputes Between States and

Nationals of Other States, which requires the United States to enforce arbitral awards issued by ICSID except under very limited circumstances. *Id.* at *2. While that litigation was pending, the investors assigned their interest in the arbitral award and the subsequent litigation to Blasket, now the named petitioner in this case. *Id.*

After multiple stays requested by one or both parties, in September 2025, this Court denied Spain's Motion to Dismiss, ECF No. 44; granted petitioner's Cross-Motion for Summary Judgment in favor of granting the petition to enforce the arbitral award, ECF No. 52; and entered judgment "in favor of petitioner recognizing and confirming the ICSID's Award, including €77,000,000 in damages, interest on those damages from June 20, 2014, to January 21, 2020, at 1.16% per annum compounded monthly, and from January 21, 2020, to the date of payment at 2.16% per annum compounded monthly, and €2,515,291.69 in arbitration costs, as calculated in the Award." *Blasket*, 2025 WL 3516146, at *9 (citations omitted).

Spain, having repeatedly expressed its view that the law of the European Union ("EU law") prohibits payment of the judgment, timely appealed this Court's decision. Not. of Appeal; *see also* Resp.'s Mot. to Dismiss at 32, ECF No. 44 ("Spain is bound by a Decision of the European Commission prohibiting Spain from paying the pecuniary obligations that the Award imposes."); Resp.'s Supp. Br. in Support of Resp.'s Mot. to Dismiss & Opp'n to Pet'r's Cross-Mot. for Summ. J. at 21, ECF No. 82 ("EU law prohibits Spain from paying the award unless and until the [European Commission] grants approval to do so." (cleaned up)); Resp.'s Not. Supp. Auth. at 2, ECF No. 90 ("[T]he [European] Commission ordered Spain to ensure that no payment, implementation or execution of the award is . . . effected." (cleaned up)); Resp.'s Mem. in Support of Resp.'s Mot. to Stay Enforcement of J. & Quash Subpoenas ("Resp.'s Stay Mem.") at 2, ECF No. 112-1 (similar). Meanwhile, from petitioner's viewpoint, Spain has made no efforts to pay

the judgment and has not posted a supersedeas bond. Pet'r's Opp'n at 1.[2] On October 28, 2025, petitioner served Spain with a set of discovery requests pertaining to the location of Spain's assets, including inquiries about "commercial relationships and financial transactions with thousands of commercial entities and individuals." Resp.'s Stay Mem. 3. Between November 3 and November 13, 2025, petitioner issued subpoenas to Clearing House and six banks, seeking information about the location of Spain's assets. *See, e.g.*, Resp.'s Clearing House Mot., Ex. A, Clearing House Subpoena, ECF No. 107-2; Resp.'s Stay Mot., Ex. F, Bank of New York Mellon Subpoena, ECF No. 112-4.

Later that month, Spain moved to quash the subpoena sent by petitioner to Clearing House, Resp.'s Clearing House Mot., and then, in a separate motion, moved to stay enforcement of the judgment and all post-judgment discovery in pursuant of enforcement, or in the alternative to quash petitioner's discovery request and the subpoenas directed by petitioner to Spain and to six other financial institutions, Resp.'s Stay Mot. Petitioner opposes all relief sought in Spain's two motions, Pet'r's Opp'n, and moves for declarations, pursuant to 28 U.S.C. §§ 1610(c) and 1963, allowing petitioner to (1) attach and execute on Spain's assets in satisfaction of the September 2025 Judgment, and (2) register the judgment in any other judicial district of the United States, Pet'r's Cross-Mot. Spain's two motions and petitioner's cross-motion are now ripe for resolution.

---

[2]  Notwithstanding Spain's repeated insistence that the September 2025 Judgment cannot be paid, in June 2025, Spain *did* satisfy judgment in favor of Blasket in a nearly identical case involving an arbitral award stemming from violations of the ECT before another Judge on this Court. *See* Notice of Satisfaction of Judgment, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-cv-2701 (RC) (D.D.C. filed June 4, 2025), ECF No. 38. In that case, judgment to enforce an ICSID arbitral award had also been issued in Blasket's favor, Spain had filed an appeal to the D.C. Circuit, and the parties were in the midst of briefing motions like those pending before this Court, when the parties filed a notice that "Spain has fully satisfied the Final Judgment." *Id.* at 1. The motions were then deemed moot, with consent of the parties, *see* Minute Order, *Blasket*, No. 23-cv-2701 (D.D.C. filed June 5, 2026), and the parties jointly stipulated to dismissal of the appeal, Jt. Stip. of Dismissal, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 24-7182 (D.C. Cir. filed June 4, 2025). Neither party mentions that case in briefing and the record in that case contains no detail as to why Spain was able to satisfy the judgment to enforce an ICSID arbitral award there in the face of EU law; yet, this resolution raises some skepticism as to Spain's assertion that the judgment in the instant case simply cannot be voluntarily paid due to EU law.

## II.    DISCUSSION

Spain's motion to stay judgment or discovery is addressed first and, for the reasons discussed below, is denied.[3]  Petitioner's motion for orders allowing execution, attachment, and registration of the September 2025 Judgment in other districts, is granted.

### A.  Spain's Stay Motion

Spain describes petitioner's post-judgment discovery efforts as a "brazen discovery tactic[]," Resp.'s Stay Mem. at 5, and requests a stay to halt "all efforts by [petitioner] directed towards enforcement, . . . including, but not limited to," petitioner's interrogatories and document requests directed to Spain and petitioner's issuance of seven subpoenas to third parties, Resp.'s Stay Mot. at 1.  As support for a stay, Spain asserts that petitioner has failed to meet either the statutory requirements under the Foreign Sovereign Immunities Act ("FSIA") for "attachment or execution" of a foreign sovereign's assets, Resp.'s Stay Mem. at 5 (quoting 28 U.S.C. § 1610(c)), or the procedural requirements, under Federal Rule of Civil Procedure 62, to proceed with post-judgment discovery in aid of enforcement of judgment, Resp.'s Reply Mem. in Support of Mots. to Stay & to Quash Subpoenas & in Opp'n to Pet'r's Mot. for Relief Pursuant to 28 U.S.C. §

---

[3]    Spain's alternative requested relief—to quash a discovery request and subpoenas issued by petitioner—is denied as premature, and parties are directed to renew their conferral efforts in light of this Opinion and Order.  The Standing Order requires that "[b]efore bringing a discovery dispute to the Court's attention, the parties must confer in good faith in an attempt to resolve the dispute informally," and then take certain steps to present the issue to the Court before seeking leave to file a discovery motion, by submitting, via email, to the Court, a request for a discovery conference together with a summary of the dispute.  Standing Order ¶ 9, ECF No. 41.  When the parties filed the pending motions, no such steps had been taken.  While appreciating that Spain "filed the Quash Motions as an integrated part of Spain's Stay Motion pursuant to Section 1610(c) of the FSIA without considering the Quash Motions to be a separate discovery dispute subject to separate pre-motion conference and leave requirements under Paragraph 9 of the Standing Order," Resp.'s Reply Mem. in Support of Mots. to Stay & to Quash Subpoenas & in Opp'n to Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 1610(c) & 28 U.S.C. § 1963 ("Resp.'s Opp'n") at 19, ECF No. 121, now, with Spain's motion for a stay denied, the parties are directed to confer and make further attempts at resolution of any disputes regarding the subpoenas and discovery requested from Spain, taking into consideration the "quite permissive" regime of post-judgment discovery set out in Federal Rule of Civil Procedure 69(a)(2), which is equally applicable to foreign sovereigns, *see Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138, 142 (2014), before seeking judicial attention.  This direction applies to the parties' recent email request, on April 8, 2026, for a discovery conference.

1610(c) & 28 U.S.C. § 1963 ("Resp.'s Opp'n") at 5, 17, ECF No. 121. Neither of these proffered grounds for staying enforcement of the judgment in this matter is persuasive.[4]

### 1. Stay Based on FSIA's § 1610(c)

Spain's primary argument in support of a stay is that petitioner has failed to comply with the FSIA's § 1610(c) requirement not permitting any attachment or execution "until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section

---

[4]    Petitioner suggests that the appropriate legal standard for evaluating Spain's motion to stay enforcement of judgment is the four-factor injunction test applicable to enjoining an ongoing proceeding (*i.e.*, likelihood of success, irreparable harm, harm to the other party, and the public interest), *see* Pet'r's Opp'n at 7, and Spain responds that even these "traditional stay factors warrant granting Spain's Stay Motion," Resp.'s Opp'n at 9.  Neither side is correct. Once judgment is entered, the propriety of a stay of execution on a money judgment is governed by Federal Rule of Civil Procedure 62, which the D.C. Circuit instructs uses a different standard than the factors that counsel for or against an injunction halting proceedings.  *See Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760-61 (D.C. Cir. 1980) (holding that under "Rule 62 . . . a full supersedeas bond should be the requirement in normal circumstances" but explaining that a District Court may exercise its discretion to allow an unbonded stay by applying the standard that "unusual circumstances" justify the unbonded stay and that the unbonded stay "do[es] not unduly endanger the judgment creditor's interest in ultimate recovery"); *see also Doraleh Container Terminal SA v. Republic of Djibouti*, No. 20-cv-2571 (BAH), 2023 WL 12004450, *2 n.2 (D.D.C. Apr. 24, 2023) (explaining that "*Federal Prescription* . . . sets out the governing standard in this Circuit for an unbonded stay" and "[n]o . . . alternative test is referenced," including the "traditional factors" for a stay).  The four-factor injunction test is not mentioned in *Federal Prescription*, which lays out the standard for the "proper exercise of discretion" in considering unbonded stays of money judgments, *Fed. Prescription Serv.*, 636 F.2d at 760-61, and the D.C. Circuit has not since revisited this holding.

To be sure, despite the holding in *Federal Prescription*, a stay of a money judgment is sometimes analyzed under *both* standards, either treating the four-factor test as a "first step" in determining whether "unusual circumstances" exist under *Federal Prescription*, *see, e.g., Stati v. Republic of Kazakhstan*, No. 14-cv-1638 (ABJ), 2018 WL 11409986, *2 & n.3 (D.D.C. Nov. 13, 2018), or by treating the four-factor test as an alternative route to obtain a stay of a money judgment pending appeal, *see, e.g., Pao Tatneft v. Ukraine*, No. 17-cv-582 (CKK), 2021 WL 2209460, *2 (D.D.C. June 1, 2021) (analyzing the propriety of an unbonded stay of a money judgment under *Federal Prescription* but stating that "[c]ourts may also analyze a stay using the traditional stay factors articulated in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), and applying those factors in the alternative, even though *Braunskill* involved the question whether to stay the release of a prisoner from custody pending the government's appeal of a granted *habeas* petition).  Regardless, Spain would not be entitled to a stay under the four-factor injunction/stay test because, for the reasons articulated in Minute Order (Feb. 11, 2025), Spain has little likelihood of success on its appeal given the D.C. Circuit's rejection of the same defenses asserted here in another case and denial of rehearing en banc.  Spain invokes (1) the fact that the D.C. Circuit is holding in abeyance similar appeals, and now Spain's appeal of this matter, pending Spain's petition for certiorari in a similar case, and (2) that the Supreme Court has requested the opinion of the Solicitor General in relation to that petition for certiorari.  *See* Resp.'s Not. of Supp. Auth. at 1-2, ECF No. 123. These procedural steps, which may well have been taken for reasons other than any view of the merits of Spain's arguments raised in its petition for certiorari, do not overcome the consistency with which Judges on this Court and at the D.C. Circuit have resolved the jurisdiction and merits of investors' claims against Spain under the ECT.  Spain also will not suffer an irreparable injury from paying a money judgment duly owed to petitioner, whereas, for the reasons described herein, petitioner faces a serious risk of never being able to recover if unable to proceed promptly with post-judgment discovery and attachment of Spain's assets.

1608(e) of this chapter." 28 U.S.C. § 1610(c). According to Spain, since "no determination concerning the passage of a reasonable period of time has been sought by Blasket or issued by this Court," no post-judgment discovery is permissible. Resp.'s Stay Mem. at 1. In other words, in Spain's view, post-judgment *discovery* may not begin until this Court issues an order pursuant to § 1610(c). *Id.*

Spain's reliance on the FSIA's § 1610(c) to halt all of petitioner's post-judgment discovery is foreclosed by both the plain text of this subsection and the Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014). The plain text of § 1610(c) limits only attachment and execution, not discovery of assets. The Supreme Court has pointed out this blunt fact, stating: "There is no . . . [FSIA] provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *NML Cap.*, 573 U.S. at 142. In *NML Capital*, Argentina sought to block post-judgment discovery of its assets in the United States and abroad, arguing that such discovery violated the FSIA because the district court had "permitted discovery of Argentina's extraterritorial assets," which are not subject to attachment under the FSIA. *Id.* at 138; *see* 28 U.S.C. § 1610(a) (designating property of foreign sovereigns attachable in satisfaction of judgment to include only "property in the United States"). The Supreme Court began with the premise that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive" under Federal Rule of Civil Procedure 69(a)(2), *NML Cap.*, 573 U.S. at 138, and then analyzed "whether the [FSIA] specifies a different rule when the judgment debtor is a foreign state." *Id.* at 140. The Supreme Court found that "no part of the [FSIA] . . . addresses postjudgment discovery," and that "[f]ar from containing the 'plain statement' necessary to preclude application of federal discovery rules, the Act says not a word on the subject." *Id.* at 142-43 (alterations accepted) (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for*

*S. Dist. of Iowa*, 482 U.S. 522, 539 (1987)).  Thus, the Supreme Court made clear that a judgment creditor may, subject to regular post-judgment discovery rules, seek broad discovery about a foreign sovereign judgment debtor's assets, even "if a judgment creditor could not ultimately execute a judgment against certain property."  *Id.* at 144.

Petitioner's subpoenas and discovery requests do not seek to "attach[] or execut[e]" on any of Spain's property, *see* 28 U.S.C. § 1610(c), but rather to discover what property Spain holds and where that property is located.  *NML Capital* instructs that petitioner's present inability to attach or execute on that property—since a § 1610(c) order had not issued when petitioner sent its subpoenas and discovery request—does not have any effect on petitioner's entitlement to discovery about the location of that property.  Thus, § 1610(c), like the rest of the FSIA, has no direct bearing on the propriety of petitioner's post-judgment discovery requests and does not independently justify the stay Spain requests.

### 2.  "Unusual Circumstances" for Unbonded Stay

Alternatively, Spain argues that even if a formal FSIA § 1610(c) determination by the Court is not technically needed to begin post-judgment discovery, a stay should be granted, pursuant to Federal Rule of Civil Procedure 62(b), notwithstanding that "Spain cannot post a [supersedeas] bond" and has no intention of doing so.  Resp.'s Opp'n at 17-18.  This proffered basis for a stay is no more persuasive than Spain's reliance on the FSIA's § 1610(c).

Under Rule 62, "execution on a judgment and proceedings to enforce it" are subject to an automatic stay for only "30 days after its entry, unless the court orders otherwise," FED. R. CIV. P. 62(a), but the judgment debtor "may obtain" a further stay "by providing a bond or other security," which "stay takes effect" and "remains in effect" by the terms specified in the bond or other security approved by the court, *id*. 62(b).  "The purpose of the supersedeas bond is to secure the

appellee from loss resulting from the stay of execution." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980). "Because the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances," and is normally justified by "some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment." *Id.* Indeed, only "[i]n unusual circumstances" should a district court exercise its discretion to "order partially secured or unsecured stays." *Id.* Upon finding that "unusual circumstances" exist, a district court may order an unbonded or partially bonded stay only where the requesting party additionally establishes that this would "not unduly endanger the judgment creditor's interest in ultimate recovery." *Id.* at 760-61; *see also Klayman v. Jud. Watch, Inc.*, No. 06-cv-670 (CKK), 2019 WL 4260380, at *1 (D.D.C. Sept. 9, 2019) ("The moving party has the burden to 'objectively demonstrate the reasons for such a departure' [from the usual bond requirement]." (quoting *Grand Union Co. v. Food Emps. Lab. Rels. Ass'n*, 637 F. Supp. 356, 357 (D.D.C. 1986))).

As the judgment debtor in this case, Spain is entitled to a stay of execution upon the posting of a sufficient bond, pursuant to Federal Rule of Civil Procedure 62(b). *See Fed. Prescription Serv.*, 636 F.2d at 758-59 (explaining that where the bond provided is an "amount to satisfy the judgment in full, together with costs, interest, and damages for delay," the judgment creditor is entitled, "[b]eyond question," to a stay "as a matter of right"). Here, Spain seeks an extraordinary departure from that norm by seeking a stay of enforcement of the September 2025 Judgment without complying with the requisite posting of a bond. Unbonded stays are granted only rarely, and no "unusual circumstances" are presented to warrant deviation from the usual bond requirement.

Without directly addressing the binding and applicable "unusual circumstances" standard, *see Fed. Prescription Serv.*, 636 F.2d at 760-61; *see also supra* n.4, Spain contends that a stay of judgment enforcement and post-judgment discovery is warranted because "a reasonable period of time has not elapsed since entry of the Judgment," Resp.'s Opp'n at 4-5; Resp.'s Stay Mem. at 2, because (1) Spain has a pending appeal in this case and has filed a petition for certiorari in a similar case pending before the Supreme Court that may address "relevant and dispositive issues concerning Spain's sovereign immunity in this action," and (2) "EU Law prohibits Spain from paying the judgment absent authorization from the European Commission," Resp.'s Stay Mem. at 7-8 (capitalization altered).[5]  Even construing Spain's two reasons as presenting its best efforts to show "unusual circumstances" for an unbonded stay, no stay is justified.

First, Spain's pending petition for a writ of certiorari in a similar case and pending appeal in the instant matter do not constitute "unusual circumstances" justifying an unbonded stay.  *See Fed. Prescription Serv.*, 636 F.2d at 760 (holding that "a full supersedeas bond should be the requirement in normal circumstances" when "appellant seeks to obtain a stay" pending appeal). The mere fact of an appeal (or additionally, as here, a parallel appeal in another case), even on a sovereign immunity issue, cannot constitute an "unusual circumstance[]" because such a rule would operate to obliterate the bond requirement, most often applicable when an appeal is pending. *Id.*  While other judgments have been issued by other Judges against Spain on nearly identical issues, *see Blasket*, 2025 WL 3516146, at 8-9 nn.11-12 (collecting cases), Spain may succeed on appeal, at either the Circuit or Supreme Court levels, as is true of every case that is appealed.  Rule

---

[5]  Spain's petition requests certiorari on two questions: (1) "Whether [28 U.S.C.] §1605(a)(6) allows United States courts to assert jurisdiction over a foreign sovereign without determining whether the sovereign consented to arbitrate differences between itself and the plaintiff," and (2) whether *forum non conveniens* is "categorically unavailable" in petitions to confirm international arbitral awards.  Pet. for Writ of Certiorari, *Kingdom of Spain v. Blasket Renewable Investments, LLC*, No. 24-1130 (Sup. Ct. filed May 1, 2025).

62(b) provides a solution for judgment-debtors in this situation: a supersedeas bond.  Having declined to take that route, Spain may not invoke the mere fact of the appeal, or its appeal in another case, to obtain a stay.[6]

Second, Spain's view of the limitations imposed under EU law on the country's authority voluntarily to pay the September 2025 Judgment reflects a recycling of arguments already rejected on the merits in this case and cuts against granting a stay.  Spain explains that, in a similar case, the European Commission "determined that the award . . . cannot be paid without the European Commission's approval," and, withholding such approval, directed Spain to "'ensure that no payment, execution, or implementation of the Award shall otherwise be effected.'"  Resp.'s Stay Mem. at 9 (quoting European Commission Decision No. 2025/1235 at 48 (Mar. 24, 2025), ECF No. 107-4).  Spain has not indicated that the country is pursuing approval from the European Commission to pay the September 2025 Judgment nor has offered an estimate of the anticipated duration of a stay based on this justification.  If anything, this legal hurdle posed by Spain to its *voluntary* payment offers good reason that petitioner may wish to establish a priority interest in Spain's assets held in the United States.

Even if Spain could establish that "unusual circumstances" justified an unbonded stay here, grant of that request would nonetheless be precluded because an unbonded stay is permissible only when that would "not unduly endanger the judgment creditor's interest in ultimate recovery." *Fed. Prescription Serv.*, 636 F.2d at 760-61.  Instead, plenty of reasons are present to suspect Spain's

---

[6]   Spain has invoked its pending certiorari petition repeatedly to justify requests for stays in this and other cases prior to judgment, which justification for a stay has repeatedly been denied. *See, e.g.*, Minute Order (Feb. 11, 2025) (explaining that Spain "presents little reason that the Supreme Court is likely to grant its petition for certiorari, given the unanimous holding of the D.C. Circuit's panel that jurisdiction exists under the [FSIA], . . . and the D.C. Circuit's denial of Spain's request for rehearing en banc"); Minute Order, *Novenergia II – Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-1148 (TSC) (D.D.C. filed May 22, 2025) (similar); Minute Order, *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, No. 19-cv-1618 (TSC) (D.D.C. filed Jan. 30, 2025) (similar); Order, *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 20-cv-1708 (LLA) (D.D.C. filed Jan. 27, 2025) (similar).

"inability or unwillingness to satisfy the judgment." *Id.* at 760.  Spain has openly and repeatedly announced that, in its view, this judgment cannot and will not be paid voluntarily, and the same applies to other similar judgments held by other judgment-creditors against Spain.  *See, e.g.,* Resp.'s Stay Mem. at 2; *but see supra* n.2.  Spain argues that "the D.C. Circuit has identified three key considerations when reviewing a district court's exercise of discretion in granting a stay without bond: (1) the damage award amount, (2) the net worth of the moving party in relation to the damage award, and (3) the residency status of the moving party," Resp.'s Opp'n at 17 (citing *Fed. Prescription Serv.*, 636 F.2d at 761), and points out that the judgment is for "77 million EUR compared to Spain's net worth and rank as one of the 15 largest economies in the world" and "although Spain is not a resident of the District of Columbia, it is a foreign sovereign state" that has appeared in many U.S. proceedings, *id.* at 18.

This focus on Spain's solvency and capacity to pay the September 2025 Judgment misses the crux of petitioner's concern, however.  Petitioner does not fear Spain's insolvency, but rather that Spain will simply refuse to pay the Judgment and, meanwhile, that other creditors will establish priority interests over Spain's attachable U.S.-based assets, the total value or durability of which Spain does not disclose.  Thus, petitioner has good reason to seek enforcement of the Judgment expeditiously and reason to fear that, should an unbonded stay be granted, petitioner may never recover.  Respondent's request for a stay is therefore denied.

**B.  Petitioner's Motion for Orders Pursuant to 28 U.S.C. §§ 1610(c), 1963**

Petitioner moves for entry of two declaratory orders in furtherance of its efforts to execute the September 2025 Judgment.  Each is discussed next.

12

### 1. Order Pursuant to 28 U.S.C. § 1610(c)

Petitioner moves for entry of an order, pursuant to 28 U.S.C. § 1610(c), allowing attachment and execution of Spain's assets in satisfaction of judgment. The FSIA bars any "attachment or execution" against the property of a foreign sovereign "until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c).[7] In accordance with this statutory direction, petitioner requests "a determination pursuant to 28 U.S.C. § 1610(c) that a reasonable period of time has elapsed since this Court entered judgment on September 11, 2025 against Respondent the Kingdom of Spain . . . such that Blasket may attach and execute on Spain's assets in satisfaction of this Court's judgment." Pet'r's Cross-Mot. at i.

At the outset, petitioner has not described the property against which attachment or execution is sought, but "[s]uch a description is not required." *Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 101 (D.D.C. 2011). "A § 1610(c) order in this case serves only to determine . . . that a reasonable period of time has elapsed following entry of judgment . . . . Execution of the judgment with respect to any particular property requires a separate judicial determination that the property at issue falls within one of the exceptions to immunity." *Id.* at 101-02 (citing *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 270-71 (D.D.C. 2011)); *accord BCB Holdings Ltd. v. Gov't of Belize*, 232 F. Supp. 3d 28, 34 (D.D.C. 2017); *see also Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 214 (2018) ("[I]ndividuals with § 1605A judgments against a foreign state must primarily invoke other provisions revoking the grant of

---

[7]   For an order under § 1610(c) to be entered, the Court must also find that a reasonable time has elapsed since "the giving of any notice required under section 1608(e)," which pertains to service of default judgment upon foreign sovereigns who are in default as defendants or respondents, *see* 28 U.S.C. §§ 1608(e), 1610(c). Since Spain has never been in default in this case and judgment was entered on cross-motions for summary judgment, neither § 1608(e) nor this additional requirement under § 1610(c) are relevant.

immunity for property related to commercial activity . . . unless the property is expressly carved out in an exception . . . .").

What constitutes a "reasonable period of time" will "of course vary according to the nuances of each case." *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001). Drawing from the FSIA's legislative history, the relevant factors include "the procedures necessary for the foreign state to pay the judgment (such as the passage of legislation), evidence that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of the judgment." *Id.* (citing H.R. Rep. 1487, 94th Cong., 2d Sess. 1, 30 (1976)); *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 16-cv-661 (RC), 2017 WL 6349729, *1 (D.D.C. June 9, 2017) (considering the same factors).

To date, more than six months have passed since entry of the September 2025 Judgment, and no evidence has been presented that "that the foreign state is actively taking steps to pay the judgment." *Ned Chartering*, 130 F. Supp. 2d at 67. To the contrary, Spain has repeatedly declared that, in its view, the judgment cannot be voluntarily paid. Periods of even less than six months have routinely been considered to satisfy the requirements of § 1610(c), particularly when the foreign sovereign has given no indication of its intention to pay the judgment. *See, e.g.*, *id.* (six weeks); *Warmbier v. Democratic People's Republic of Korea*, No. 18-cv-977 (BAH), 2019 WL 11276677, at *1 (D.D.C. Apr. 9, 2019) (three months); *Saint Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, No. 20-cv-129 (RC), 2021 WL 6644369, at *2 (D.D.C. July 13, 2021) (four months); *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, No. 17-cv-2559 (ZMF), 2022 WL 521747, at *3 (D.D.C. Feb. 22, 2022) (six months).

Spain advances two reasons why, in its view, no "reasonable period of time" has yet passed, namely, Spain's pending appeal in this matter and pending writ of certiorari in another, similar matter bearing on questions of sovereign immunity potentially dispositive here, and Spain's view that it "is legally prohibited from paying the award underlying the Judgment without the European Commission's prior authorization." Resp.'s Stay Mem. at 8. Neither reason passes muster.

First, Spain argues that its pending appeal and pending petition for a writ of certiorari to the Supreme Court counsel against a finding that a reasonable time has passed. Resp.'s Stay Mot. at 6. For the same reasons that these pending appeals do not justify an enforcement stay, *see supra* Part II.A.2, they also do not justify a finding that Spain has not had a reasonable period of time voluntarily to pay the judgment. Spain could post a supersedeas bond—the typical route for an appellant judgment-debtor who does not wish to take the risk of handing over money to the creditor while the case is on appeal—but Spain cannot or will not do so.

Second, Spain points to its obligation, per the European Commission's directive, to "ensure that no payment, execution, or implementation of the Award shall otherwise be effected." Resp.'s Stay Mem. at 9 (internal quotation marks omitted). If anything, however, this obligation cuts in favor of allowing petitioner to identify and attach Spanish assets located in the United States— Spain has good reason to conceal, move, or otherwise evade execution of its assets in an effort to comply with its view of the European Commission's commands. Spain argues that the FSIA's § 1610(c) factor of "procedures necessary for the foreign state to pay the judgment" includes the process of obtaining "prior approval by the European Commission," Resp.'s Stay Mem. at 2, 9, but offers no indication that Spain has initiated this process or intends to do so. Instead, Spain simply repackages its unsuccessful argument against confirmation of this Award when it urged this Court to ignore the United States' ICSID treaty obligations to enforce the Award because EU

law prohibits Spain from making payment. *See Blasket*, 2025 WL 3516146, at *9. Unlike a sovereign that intends to pay a judgment but must jump through administrative or legislative hoops first, Spain evinces no intent to pay, and appears to argue that so long as EU law prohibits payment of awards such as this one, petitioner should be barred from enforcing the September 2025 Judgment. Spain's view of its legal inability voluntarily to pay the September 2025 Judgment counsels in favor of, not against, a finding that a reasonable period of time has passed.

Petitioner has thus supported a finding, pursuant to the FSIA's § 1610(c), that a reasonable period of time has passed and that petitioner may seek enforcement via attachment and execution of Spain's assets.

### 2. Order Pursuant to 28 U.S.C. § 1963

"A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963. Since Spain's appeal in this case is pending, petitioner moves for a finding that "good cause" exists to allow petitioner to register the September 2025 Judgment in "other judicial districts of the United States where Spain may have assets, including the Southern District of New York," so that petitioner may seek attachment and execution of assets located elsewhere in the country. Pet'r's Cross-Mot. at ii.

"[G]ood cause can be established by [(1)] an absence of assets in the judgment forum, coupled with [(2)] the presence of substantial assets in the registration forum." *Spray Drift Task Force v. Burlington Bio-Med. Corp.*, 429 F. Supp. 2d 49, 51 (D.D.C. 2006) (quoting *Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68, 80 (D.D.C. 2002)). Courts "have found sufficient declarations containing no more than counsel's assertion, on information and belief, that attachable

16

assets exist in other districts." *Mwila v. Islamic Republic of Iran*, No. 08-cv-1377 (JDB), 2019 WL 13134796, *2 (D.D.C. May 15, 2019); *see also Non-Dietary Exposure Task Force v. Tagros Chems. India, Ltd.*, 309 F.R.D. 66, 69 (D.D.C. 2015).  Where such evidence has been presented "national registration" of the judgment is permitted to prevent defendants from "preemptively mov[ing] assets to places where [petitioner] cannot register and thereby remain[ing] one step ahead of [petitioner]." *Wye Oak Tech. v. Republic of Iraq*, No. 10-cv-1182 (RCL), 2023 WL 7112801, *8 (D.D.C. Oct. 27, 2023) (internal quotation marks omitted) (quoting *Mwila*, 2019 WL 13134796, at *2); *see also Spray Drift*, 429 F. Supp. 2d at 51-52 (allowing registration in any U.S. district court); *Non-Dietary Exposure Task Force*, 309 F.R.D. at 69 (same).

To support its motion for an order, pursuant to § 1963, permitting registration of the September 2025 Judgment in any or all other districts, petitioner has submitted a declaration from petitioner's counsel stating that petitioner "is unaware of executable assets of Spain in this District sufficient to satisfy the approximately €77 million judgment," and that "[o]n information and belief, Spain has substantial attachable assets in the State of New York."  Decl. of Carson W. Bennett, Pet'r's Counsel ¶¶ 7-8, ECF No. 117-1.  Petitioner additionally explains in briefing that "although Petitioner believes a substantial portion of Spain's assets are presently located in New York, these assets, in addition to others that may be revealed in post-judgment discovery, are 'potentially mobile.'"  Pet'r's Opp'n at 24 (quoting *Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82, 85 (D.D.C. 2013)).  This quantum of evidence has sufficed in other cases to justify permission for national registration of a judgment and suffices here.  *See, e.g.*, *Chevron*, 987 F. Supp. 2d at 85 (declining to "require[] individualized showings in each district" and instead opting to "allow registration 'in any other district' once good cause has been shown that 1) the defendant has an absence of assets in the judgment forum and 2) the defendant has substantial assets in other

17

forums" (quoting 28 U.S.C. § 1963)); *Non-Dietary Exposure Task* Force, 309 F.R.D. at 69 (finding that a nearly identical declaration "is enough to establish good cause to register the judgment . . . in other district courts" and granting nationwide registration (citing Decl. of Peter L. Gray, *Non-Dietary Exposure Task Force*, No. 15-cv-132 (JDB), ECF No. 1-1)).

Petitioner's motion to allow registration of the September 2025 Judgment in all judicial districts of the United States is therefore granted.

## III.    CONCLUSION

For the foregoing reasons, Spain's motions to Quash or Modify the Third-Party Subpoena to the Clearing House Payments Company, LLC, ECF No. 107, and to Stay Enforcement of the Judgment and Quash Subpoenas, ECF No. 112, are **DENIED**.  Petitioner's Cross-Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, ECF No. 116, is **GRANTED**.

An order consistent with this Memorandum Opinion will be contemporaneously filed.

Date: April 10, 2026

 

                    _____

                    **BERYL A. HOWELL**

                    United States District Judge